**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALAN B. REICHARD,

    Petitioner,

v.

AUTOMOTIVE MACHINISTS LODGE NO. 1173,

    Respondent.

_____/

No. C 05-2038 PJH

**ORDER RE FINDINGS OF FACT AND CONCLUSIONS OF LAW**

At the May 25, 2005 hearing on petitioner's motion for temporary restraining order, the court invited petitioner to submit supplemental briefing on the need for findings of fact and conclusions of law. Petitioner has submitted briefing suggesting that findings of fact and conclusions of law are required to the extent that findings of fact and conclusions of law are required by Fed. R. Civ. P. 52(a) and 65(d) for all preliminary injunctive relief.

The court believes that the proposed order submitted by petitioner and entered on May 25, 2005, in conjunction with the court's statements at the hearing, are sufficient for the purposes of Fed. R. Civ. P. 52(a) and 65(d). However, for purposes of any appeal or in the event a contempt hearing becomes necessary, the court enters the following findings of fact and conclusions of law.[1]

**FINDINGS OF FACT**

Petitioner, the regional director of the Thirty-Second Region of the National Labor Relations Board ("NLRB") has moved for a temporary restraining order concerning a labor

---

[1] The court has attempted to "avoid commingling findings of fact with conclusions of law." Lieber v. Macy's West, Inc., 80 F. Supp. 2d 1065, 1066 n.1 (N.D. Cal. 1999). To the extent this effort fails, "any conclusions that are inadvertently labeled as findings (or vice versa) shall be considered 'in [their] true light, regardless of the label that the . . . court may have placed on [them].'" Id., quoting Tri-Tron International v. Velto, 525 F.2d 432, 435-36 (9th Cir. 1975).

1  dispute between employer Future Ford of Concord, a car dealership, and the Automotive
2  Machinists Lodge ("the union").  Future Ford has derived gross revenues in excess of
3  $500,000 and purchased and received goods valued in excess of $5000.
4      Future Ford purchased Lithia Ford in Concord, California on or around October 22,
5  2004.  Lithia had a collective bargaining agreement place with the union, but Future Ford
6  believed it was not required to recognize or bargain with the union when it purchased Lithia
7  Ford.  On October 28, 2004, Future Ford owner Henry Hansel received a phone call from
8  Mark Hollibush, area director of the union, asking if Future Ford would be willing to negotiate a
9  contract for its employees.  When Future Ford declined, Hollibush said he would go to "war"
10 with Future Ford.
11     On October 28, the union called for a strike and picketing against Future Ford.  The
12 picketing continued every day until December 1, and continued on weekends and
13 Wednesdays (Future Ford's busiest days) until Feb. 6, 2005.
14     On February 10, the NLRB filed a complaint against the union, claiming that it had
15 violated section 8(b)(7)(C) of the National Labor Relations Act ("NLRA") by picketing for union
16 recognition for more than 30 days without having filed a valid petition with the NLRB.  After the
17 filing of the complaint, the union informed the NLRB that it would not picket for recognition until
18 after the dispute was resolved.
19     On February 17, the union began picketing Future Ford again, claiming that they were
20 not picketing for union recognition, but rather, were picketing because Future Ford did not pay
21 area standard wages.  The union began distributing flyers during their protests that on one
22 side detailed the area standards issues, but on the other, continued to protest the lack of union
23 recognition.  The union denied that it was seeking recognition in correspondence with the
24 NLRB, but continued to protest.  On March 21, the union sent a memo to its membership
25 detailing the need for recognition at Future Ford and urging the membership to participate in
26 further protests.
27     On April 13, Hollibush told a Future Ford employee that the protests would continue
28

2

until Future Ford either recognized the union or went out of business.

On May 2, the NLRB informed the union that if the case did not settle by May 6, it would move for injunctive relief.  On May 6, the union informed the NLRB that it would not picket for "a reasonable period" of time for any purpose, but reserved the right to resume picketing on the area standards issue "at some future date."  The NLRB notes that the union admits that it will be picketing again, and that the union does not state when picketing will recommence.

## CONCLUSIONS OF LAW

The NLRB asserts that the union has engaged in unfair labor practices in violation of section 8(b)(7) of the NLRA, 29 U.S.C. § 158(b)(7).  Under section 10(l) of the NLRA the NLRB may seek injunctive relief in district court if it has "reasonable cause" to believe that recognitional picketing is taking place.  29 U.S.C. § 160(l).

In reviewing the NLRB's request, "the district court must determine whether there is reasonable cause to believe that the violation charged has been committed, and whether the issuance of an injunction is just and proper."  Nelson v. International Brotherhood of Elec. Workers, Local Union No. 46, AFL-CIO, 899 F.2d 1557, 1560 (9th Cir. 1990) (citation omitted).  Reasonable cause is found when "the factual allegations and propositions of law underlying the Regional Director's petition are not insubstantial and frivolous."  Id. (citations omitted).  The NLRB need not establish a violation of the NLRA; rather, injunctive relief is proper "if there be any evidence which together with all the reasonable inferences that might be drawn therefrom supports a conclusion that there is reasonable cause to believe that a violation has occurred."  Id. (citation omitted).

The court finds that the NLRB has established that it has reasonable cause to believe that the union was engaging in prohibited recognitional picketing.  See Hansel Affidavit Exh. 1 (statements made by Hollibush about union planning recognitional picketing in October 2004); 12/2/04 Hill Affidavit (public statements made by union representative on October 30, 2004 demanding recognition); 12/2/04 Hill Decl. Exh. 1 (union flyer from October 2004 demanding recognition); 2/23/05 Hill Decl. Exh. 2 (leaflet implying that employer would not recognize

3

union); 5/4/05 Bohannon Decl. Exh. 1 (notes from conversation with union representative where representative stated that union's goal was to gain recognition). Furthermore, because the union could begin picketing again at any time and has in the past stopped and resumed picketing, the court finds that the request for injunctive relief is not moot.

Having found that there is reasonable cause to believe that the charged violation has been committed, and that it may be committed again, the court further finds that the issuance of an injunction is just and proper. Nelson, 899 F.2d at 1560 (9th Cir. 1990). The temporary restraining order entered on May 25, 2005, sets forth the extent of the restraint on respondent's conduct that was approved at the hearing.

**IT IS SO ORDERED.**

Dated: June 6, 2005

_____
PHYLLIS J. HAMILTON
United States District Judge